Points Decided.

(December 3, 1912.)

## COEUR D'ALENE AND ST. JOE. TRANSPORTATION CO., Respondent, v. W. W. FERRELL et al., Appellants.

[128 Pac. 565.]

COMMON CARRIERS—UNREASONABLE DISCRIMINATION IN TRANSPORTATION FACILITIES—CONTRACTS CREATING A MONOPOLY—MONOPOLIES OBNOXIOUS TO CONSTITUTION.

(Syllabus by the court.)

1. Under the provisions of sec. 6 of art. 11 of the state constitution, "no undue or unreasonable discrimination shall be made in charges or facilities for transportation of freight or passengers of the same class, by any railroad, or transportation, or express company, between persons or places within the state."

2. A contract entered into by a railroad company granting to a steamboat company the exclusive right to receive and discharge freight and passengers at a dock or wharf which is a part of and connected with its depot and station grounds, and which affords the only means and facility for approaching the station grounds by means of the water highway, and excluding all the competitors of such steamboat company from like or similar privileges at any time or at all, is undue and unreasonable discrimination in favor of the one company and against its competitors, which is in violation of the provisions of the constitution, sec. 6, art. 11.

3. Where a railroad company acquired twenty acres of station grounds under the provisions of the act of Congress of March 3, 1878, for occupation and use as a common carrier, and such grounds are so situated as to abut upon a navigable lake or body of water, and such company constructs thereon a dock or wharf for use in receiving and discharging freight and passengers from boats and for forwarding through freight and passengers, and the same is in fact used both in carrying on through business and local business, such dock or wharf is a public facility for the transportation of freight and passengers within the purview and meaning of sec. 6, art. 11 of the constitution, and such railroad company cannot make any undue or unreasonable discrimination between competing boat lines engaged in the same kind or class of business with such railroad company.

4. A railroad company owning and maintaining a dock or wharf on its station grounds may adopt and enforce such reasonable rules and regulations as will prevent blocking and interfering with its

business or with the public traffic, and so long as such rules and regulations are reasonable and do not amount to an undue or unreasonable discrimination between competitors, the same may be enforced and observance thereof required.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County. Hon. John M. Flynn, Judge.

Action by plaintiff for a perpetual injunction against defendants. Judgment for plaintiff and defendants appealed. *Reversed.*

McNaughton & Berg  and J. L. McClear, for Appellants.

The lease intends to create a monopoly in so far as it can lawfully be done in favor of the transportation company in a public terminal facility. So long as the plaintiff enjoys the facility, this wharf, in relation to freight not billed through, the railroad company is bound to grant defendants the same privilege. (Sec. 6, art. 11, Const. of Idaho; *Indian River Steamboat Co. v. East River Transp. Co.*; 28 Fla. 387, 29 Am. St. 258, 10 So. 480; *Kalamazoo Hack Co. v. Sootsma,* 84 Mich. 194, 22 Am. St. 693, 47 N. W. 667, 10 L. R. A. 819; *Oregon S. L. & U. N. Ry. Co. v. Ilwaco R. & N. Co.,* 51 Fed. 611.)

Elder & Elder and John P. Gray, for Respondent.

The lower court found that the charter of the railroad company does not compel or require the railroad company to construct or maintain the wharf or to accept or receive merchandise or other freight thereon for transportation, and there is no statute in this state requiring the railroad company so to do. The respondent maintains that the railroad company never became a common carrier as to this wharf in the sense that it was bound to accord to the public or to the appellant a right to use it. (*Louisville & Nashville R. R. Co. v. West Coast Naval Stores Co.,* 198 U. S. 483, 25 Sup. Ct. 745, 49 L. ed. 1135; *Weems Steamboat Co. v. People's Steamboat Co.,* 214 U. S. 345, 29 Sup. Ct. 661, 53 L. ed. 1024; *Ilwaco R. & N. Co. v. Oregon Short Line Co.,* 57 Fed. 673, 6 C. C. A. 495.)

The railroad company must have some right to make reasonable contracts and arrangements for the accommodation of its patrons, and the transportation of freight and passengers beyond the terminus of its road. (*Donovan* v. *Pennsylvania Co.*, 199 U. S. 279, 26 Sup. Ct. 91, 50 L. ed. 192.)

In *Louisville & Nashville R. R. Co. v. West Coast Naval Stores Co.*, the supreme court held that the question of whether or not a wharf was a public or a private wharf was a question of fact. And so do all of the authorities hold. (*Dutton v. Strong*, 66 U. S. 1, 17 L. ed. 29.)

The court below expressly found that this wharf is not now, and never has been, a public wharf, or dedicated or devoted to public uses, and is not now, and never has been, impressed with a public use.

AILSHIE, J.—This action was brought by the Coeur d'Alene & St. Joe Transportation Co. against the defendants, Ferrell, Taylor and Lester, to restrain and enjoin them from landing and tying their boats to what is known as the "Electric" dock, at Coeur d'Alene City. The electric dock is the dock of the electric railway company known as the Spokane & Inland Empire Ry. Co. This railroad was built about the year 1903, and at the time of its construction it acquired from the federal government twenty acres of land under the provisions of the act of Congress of March 3, 1878 (18 Stat. at Large, 482), which authorizes railroad companies to take twenty acres of public domain for station purposes upon complying with the provisions of the act. This twenty-acre tract was formerly a part of the Ft. Sherman Military Reserve, and is now used for depot and station grounds at Coeur d'Alene City, and the land abuts on Lake Coeur d'Alene, and thereby gives the railroad company waterfront and riparian rights on this body of water. The dock is built outside of and beyond the boundary line of the twenty-acre tract, or rather beyond the meander line of the lake. The dock is a continuation of the platform in front of the passenger and freight depots, and the railroad track runs down on this platform between the freight and passenger depots for a distance of

about 120 feet into the lake beyond the freight-house. The dock was built for the purpose of connecting the station, including the passenger and freight depots, with the waterfront in order to carry on freight and passenger traffic to lake points by steamers.

In the year 1909, the owner of the railroad and station grounds, the Spokane & Inland Empire Ry. Co., entered into an agreement with the Coeur d'Alene & St. Joe Transportation Co., whereby the railway company contracted and agreed to grant to the transportation company the sole and exclusive use of its dock, free of charge, and exclusive of any and all other steamboat companies, but reserving to the railway company the right to use it for any boats it might own or use for itself, or for any boat or barge load of freight owned and offered for shipment, or received for shipment, to a lake or river point by the owner thereof. The contract and agreement provides that the transportation company shall serve as a connecting line of transportation for the purpose of forwarding all through freight and passengers from the terminus of the railroad at Coeur d'Alene to points on Lake Coeur d'Alene, and for the purpose of receiving through freight and passengers from points along the lake and delivering them upon schedule time to the station at Coeur d'Alene city. It also provided that they should have fixed schedules and connect with the trains on the company's road. This contract conferred the general and unqualified right on the transportation company to do any and all kinds of traffic business over the wharf, except that it prohibited "the handling of freight received from any other railroad company." The agreement, among other things, contains the following provision and stipulation:

"The railway company grants to the transportation company the use of its dock at Coeur d'Alene City . . . . [here follows description] free of charge and exclusive of any other steamboat company, but this shall not prevent the railway company from using it for any boats it may hereafter own or use; or for any boat or barge load of freight owned and offered for shipment, or received for shipment to a lake or

river point by the owner thereof—the intention of this paragraph being to exclude from the use of this dock any other boat or line of boats operating on a regular schedule for the carriage of freight and passengers in so far as it may lawfully be done.''

The respondent transportation company, commonly known as the ''Red Collar'' line, was running a number of boats on Lake Coeur d'Alene for the purpose of carrying freight and passengers and doing a general transportation business. At the same time other boats were plying on this lake for the same purpose and engaged in a like business. Among others, the appellants herein, Ferrell, Taylor and Lester, were running boats on the lake, and from time to time would come in to the electric dock, tie up, unload and load with freight and passengers. They apparently had no regular schedule and had no traffic arrangement or agreement with the railroad company, the owner of the dock and station grounds. They would bring in passengers, however, who continued their trip over the Inland Electric road, and they likewise brought freight which was shipped out over the same line of road. They also carried local freight and passengers and were in all respects competing lines with the Red Collar line. They were at times warned by the agents both of the railroad company and the transportation company not to tie up to the electric dock, that they had no right to do so, and that the Red Collar line had the exclusive right to that dock. They seem, however, not to have heeded the warning, and so this action was commenced by the transportation company to enjoin and restrain the appellants from further tying to this dock or unloading or receiving freight or passengers thereat. A perpetual injunction was granted, and this appeal has been prosecuted.

It is contended by appellant here, as it was contended in the lower court, ''that this dock was built as a local facility for the public patronizing the railroad, and that the railroad has always been, and now is, a common carrier upon the wharf or dock; that it is a facility for the local freight and passenger business of the railroad, and therefore the lease upon

which plaintiff bases its right to an injunction against the defendant is a discrimination in plaintiff's favor in the use of that facility and void.'' Appellants rest this contention upon the facts disclosed in the case and the provisions of sec. 6 of art. 11 of the state constitution, which provides *inter alia,* as follows:

''All individuals, associations, and corporations, similarly situated, shall have equal rights to have persons or property transported on and over any railroad, transportation, or express route in the state, except that preference may be given to perishable property. No undue or unreasonable discrimination shall be made in charges or facilities for transportation of freight or passengers of the same class, by any railroad, or transportation, or express company, between persons or places within the state; but excursion or commutation tickets may be issued and sold at special rates, provided such rates are the same to all persons.''

It is admitted that the railroad company had the right to enter into a contract with the respondent herein as a connecting carrier, for the purpose of forwarding through freight and passengers, and that it might make all arrangements and agreements necessary with such company as a connecting and forwarding carrier. The complaint, however, is that the railroad company has sought to go beyond that, and give the Red Collar line a monopoly on the business of delivering to and receiving at this dock freight and passengers, and that in so doing it is making an ''undue and unreasonable discrimination'' against competitors in the use of facilities for the transportation of freight and passengers, in violation of the foregoing provisions of the constitution.

The first contention made by appellants, namely, that the railroad company's right of twenty acres for station purposes does not confer any riparian rights and that the dock is off of its land and beyond its boundary line, is not well taken, for the reason that appellants in no way connect themselves with any property right in the lands on which the dock is situated or riparian rights upon the lake, and for this reason are not in a position to assert an independent right as

against the company, even if there were otherwise any merit in their contention. In the next place, this station was acquired not in fee absolute, but rather for the special use of a public common carrier in transacting a general transportation business, and the franchise and easement thus acquired are limited and inseparable. (*Oregon S. L. R. R. Co. v. Quigley,* 10 Ida. 784, 80 Pac. 401, and cases cited.) The dock, while some distance from the depot, is nevertheless a continuation of the depot and station platform, and is used as a means and facility for both receiving and forwarding passengers and freight. It so happens that this station ground connects with and furnishes a facility for receiving and discharging freight and passengers, both by means of the public highway by land and by water, and the. dock furnishes the means of ingress and egress by the water highway. It is clear from the evidence in the case that this dock has never been devoted and appropriated exclusively to the receiving and forwarding of through freight and passengers only, nor has it been a mere private facility, but, on the contrary, it has been as fully devoted to receiving and forwarding local freight and passengers as to through business. This question then arises: If the railroad company can give to the Red Collar line an exclusive monopoly on all local business done over this dock as well as contract with it to take care of its through traffic, will it not be discriminating against competitors of the Red Collar line with reference to all local traffic? If the Red Collar line can receive and discharge local freight and passengers over this dock and deliver local freight to the railroad company, will it not enjoy a facility for the transportation of freight and passengers not enjoyed by its competitors contrary to the provisions of the constitution? In this connection it must be remembered that the railroad company acquired its station grounds, which includes this dock, under the act of Congress *by reason of being a common carrier and for the purpose of devoting the grounds to public use in connection with the transaction of its business as such common carrier.* The depot and the dock are both situated on this ground, and the dock is therefore upon station grounds. In this particular

the present case differs from any case which has been called to our attention.    The principle of law here involved has been considered at some length by several courts.    In some instances, the opinions deal with statutes similar to our constitutional provision, and in other cases they were apparently considered under the general common-law rule against monopolies.

In *Indian River Steamboat Co. v. East Coast Transp. Co.*, 28 Fla. 387, 29 Am. St. 258, 10 So. 480, the supreme court of Florida were considering a statute of Florida very similar to our constitutional provision, and the court said: "A railroad corporation, under the laws of Florida, has the right to erect and maintain docks, wharves, and piers, as incident to its business, and to hold or dispose of them as may be deemed proper; but such corporation, engaged in the business of common carrier, has no right to lease the terminal point of its railroad track and terminal facility on a navigable stream to a steamboat company, and thereby defeat the ingress and egress to and from said railroad track on the part of other competing lines of the steamboat companies. . . . . It is not to be denied that said railroad company, or said complainant steamboat company, has the right to erect and maintain docks, wharves, and piers as incidental to their business, and hold them or dispose of them as deemed proper.    The bill alleges, and it is admitted, that the complainant steamboat company is a corporation, and that the nature and extent of its business render the erection and maintenance of docks and piers at Titusville, and elsewhere on the Indian river, necessary, and the right to do so is one of its charter privileges, and under the laws of this state the J. T. & K. W. Ry. Co. is authorized to build and maintain docks and wharves as incidental to its business.    If either company should erect a dock or wharf for its private use, we know of no law to prohibit it. . . . . But we are not dealing with the sole question of ownership or rights in reference to a dock or wharf.    It is true that the bill characterized the property in question as a dock or pier, and it appears that there are houses thereon, occupied by the complainant company as its offices and headquarters, and that said dock has been enlarged by said company, by expending

$3,000 on it, since its said lease.   No doubt there are portions of this said dock to which said company is entitled to the exclusive use.   But it also appears that upon this dock is the track and terminus of a common carrier. . . . . The real question presented here is: Can complainant corporation, engaged in carrying freight and passengers on the Indian river by means of steamboats, rent from a railroad common carrier its dock on said river, on which its track and terminal facilities are located, and exclude others from landing at said terminal point for the purpose of receiving and delivering freight and passengers to and from said common carrier? This question, we think, must be answered in the negative. If it be competent to sustain such a contract, the common carrier can select one connecting line of boats, and exclude all others from doing business with it.   Such a doctrine would lead to the legalizing of a monopoly, and the sanction of an unfair and unjust preference between connecting and competing lines of transportation.   We do not understand that a common carrier ever had such power as this."

. The same doctrine was sustained by the supreme court of Michigan in *Kalamazoo Hack & Bus Co. v. Sootsma*, 84 Mich. 194, 22 Am. St. 693, 47 N. W. 667, 10 L. R. A. 819, in a case where a railroad company had undertaken to grant an exclusive privilege to one hack line to receive and discharge all passengers at its depot and station grounds.   The court held that such a contract had the effect of creating a monopoly in violation of the statute of Michigan which is in almost the same language as our constitutional provision.

This question has been considered by the supreme court of the United States in *Louisville & N. R. R. Co. v. West Coast Naval Stores Co.*, 198 U. S. 483, 25 Sup. Ct. 745, 49 L. ed. 1135, and *Weems Steamboat Co. of Baltimore v. People's Steamboat Co.*, 214 U. S. 345, 29 Sup. Ct. 661, 53 L. ed. 1024, and applied to different facts from those involved in the present case, and the court held in those cases that the wharves were private, and that no monopoly was created in violation of law, and that the companies might exclude other boat lines from interfering in their business.   In the first of these cases, the su-

preme court held that a wharf built at the terminus of a public street in the city of Pensacola and extending into the deep water of the harbor was not a public wharf or public station at which the company should furnish equal facilities to all persons and companies, but that, on the contrary, it was a private wharf used exclusively for the purpose of procuring the transportation of freight beyond its own line by such carriers as it might select and contract with to do such business. The court said:

"We are of opinion that the wharf was not a public one, but that it was a mere facility, erected by and belonging to defendant, and used by it, in connection with that part of its road forming an extension from its regular depot and yards in Pensacola, to the wharf, for the purpose of more conveniently procuring the transportation of goods beyond its own line, and that defendant need not share such facility with the public or with any carriers other than those it chose for the purpose of effecting such further transportation."

It seems that in that case the railroad company extended a track from its station in Pensacola down to the dock, and there it transferred freight and passengers to its connecting carrier for transportation to points beyond its own line to which freight was billed or to which passengers had transportation.

In the later case of *Weems Steamboat Co. v. People's Steamboat Co.*, the court followed the doctrine of the former case, and held that the wharves there involved which were situated on the Rappahannock river were the private wharves of the transportation company and situated on lands that the company owned in fee, and that they had never been in any way dedicated to the use of any competing lines or other steamboat companies, and that to devote such docks and wharves to its private use in carrying on its business as a common carrier *was not discriminating between competing lines.*

This same doctrine was quite clearly announced by the circuit court of appeals for the ninth circuit in *Ilwaco Ry. & Nav. Co. v. O. S. L. & U. N. Ry. Co.*, 57 Fed. 673, 6 C. C. A. 495, in which Justice McKenna, then sitting as a circuit judge,

wrote the opinion.  In that case it appeared that it was one and the same company that was operating between Astoria, Or., and Shoalwater Bay, Washington.  The company had a wharf at Ilwaco, and there is transferred its freight and passengers from its railway line to its boat line and continued the transportation to Shoalwater Bay by this means.  Other steamboat lines sought to obtain the same privileges at the wharf as were enjoyed by the company's boat line.  The court held, however, that the wharf at Ilwaco made the connection between the railway line and steamboat line and was a mere convenience or instrumentality for maintaining the continuity of the route and transportation, and the court said: "The act contemplates, we think, independent carriers, capable of mutual relations, and capable of being objects of favor or prejudice.  There must be at least two other carriers besides the offending one.  For a carrier to prefer itself in its own proper business is not the discrimination which is condemned."

Now, taking the case at bar, the offending company is the Inland Empire Ry. Co.; the beneficiary is the "Red Collar" steamboat line, designated in the record as the Coeur d'Alene & St. Joe Transportation Co., and the persons offended against are the appellants, who are running steamboat lines competing with the respondent.  We have no doubt from the argument of the court in the Ilwaco case that if the steamboat company which continued the transportation of the railroad company's freight and passengers had been an independent company not owned by the railroad company, the court would have held that it was a discrimination, and would have permitted the competing companies to enjoy the dock and wharf privileges upon equal terms with the other boat line.  That would have been identical with the case under consideration. It was undoubtedly the intention of the framers of the constitution that no railroad company should confer favors upon one person, company or corporation doing business with it and exclude others seeking to do business with it from like privileges and favors.

Complaint has been made in the briefs and on the oral argument that if the company is bound to allow every tramp steamer that comes along to tie up to the dock whenever its owner sees fit, that the business of the company in receiving and forwarding freight and passengers may be seriously disturbed and interfered with, and that the company must be allowed to control and direct its own business.    There is no doubt but that this proposition is correct, but the principle enunciated by the constitution and sustained by the authorities in no way interferes with the orderly conduct of the carrier's business.    The law does not pretend to give everybody an unbridled license to use the transportation company's property as they see fit.    The thing the constitution is driving at is to prevent the company conferring a favor or an advantage on one company that it does not confer upon that company's competitor or one situated in like condition or circumstance.    Clearly, the company has a right to make rules and regulations to govern those seeking to do business with it.    It would clearly have a right to exclude other boat lines from tying up at the dock at the time and in the place where a connecting carrier must dock in order to make its schedule time and connection with the railroad company's trains.    It would also have a right to apportion space to different transportation lines and to fix the times at which they could dock.

At this juncture, it is well enough to call attention to the fact that the constitution does not arbitrarily and unqualifiedly prohibit ''discrimination,'' but it prohibits ''undue and unreasonable discrimination.''    This question was discussed in the constitutional convention, and an effort was made to strike the words ''undue and unreasonable'' from the section, but that effort failed, and these words were allowed to remain. (Proceedings Const. Conv., vol. 1, p. 892.)    This was done upon the theory that it would undoubtedly be necessary for some discrimination to be made at times; for instance, two persons simultaneously delivering to a railroad company large quantities of the same kind of property for shipment.    It might be impossible for the company to receive or ship the property of both shippers at the same time.    It may be neces-

sary to ship one man's property one day and the other man's property a few days later. This would be a slight discrimination, and yet perhaps not "undue or unreasonable," and so the railroad company in this case would be obliged to have the connecting carrier with which it had a contract for forwarding interstate shipments to tie up to its dock on schedule time and discharge and receive freight and passengers. It might be impossible for some other boat to tie up and receive or discharge passengers at the same time, and so a slight discrimination would occur, but this would clearly not be "undue or unreasonable." But it is clearly an undue and unreasonable discrimination to wholly exclude the competitor from receiving and discharging freight and passengers at this dock or station.

If the appellants herein fail to observe the rules and regulations of the company or attempt to in any way block traffic or interfere with its competitors or with the railroad company's connecting carrier in the transaction of its business, they will clearly be subject to the restraining order of the court, requiring them to observe any reasonable regulations. On the other hand, it is, to our minds, clearly contrary to the provisions of the constitution to enjoin them from approaching this dock for the purpose of receiving or discharging freight and passengers.

The judgment of the lower court must therefore be reversed, and the cause is remanded, with instruction to take further action in accordance with the views herein expressed. Costs awarded in favor of appellants.

Stewart, C. J., and Sullivan, J., concur.