## D. T. TUCKER, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.

Division One, April 6, 1923.

SHIPPERS: Individuals: Discrimination: Switch Track: Statute. A switch track, partly on defendant's right-of-way and partly on private ground, had been used by appellant in shipping lumber

from his saw mill, and in 1920 that part of it on defendant's right-of-way was leased exclusively to a sand company, a corporation, constituted of one man, and he extended it over his own land to his sand pits. Appellant brings suit for damages against the railway company for failure to furnish him ample shipping facilities under the statute (Sec. 9975, R. S. 1919) which provides that "no railway company . . . shall hereafter make any discrimination in charges or facilities in the transportation of freight or passengers between transportation companies and individuals, nor in the transportation of freight between commission merchants or other persons-engaged in the transportation of freight and individuals, in favor of either, by abatement, drawback or otherwise, nor shall any such company . . . make any preference between the parties aforesaid in furnishing cars or motive power, for the purpose aforesaid." *Held*, that the statute is penal, and must be strictly construed, and does not apply to a discrimination by the railway company against one individual in favor of another individual, and plaintiff cannot recover.

Transferred from Springfield Court of Appeals.

AFFIRMED.

*Corbett & Stiles* for appellant.

(1) The statute expressly prohibits any discrimination in facilities for the transportation of freight between persons engaged in transportation of freight, or making any preference between them in furnishing cars for the purpose aforesaid, and provides that in case of such discrimination, the carrier shall forfeit and pay to the injured party the whole amount of such transportation charged, to be recovered in any court of competent jurisdiction. Sec. 3174, R. S. 1909; Sec. 9975, R. S. 1919. (2) A railroad company cannot lease or license its right-of-way or depot grounds in such a way as to discriminate between shippers. Hobart-Lee Tie Co. v. Stone, 135 Mo. App. 438; Chouteau v. Railway, 22 Mo. App. 287; Cravens v. Rodgers, 101 Mo. 247.

*W. F. Evans* and *Ward & Reeves* for respondent.

(1) Plaintiff's petition being based upon Section 9975, Revised Statutes 1919, which is a penal statute; and his action being for penalty, then upon the uncontradicted proof in this case, plaintiff made out no case and should have been cast on demurrer. (a) Said statute provides that "no railroad company shall hereafter make any discrimination in facilities in the transportation of freight between transportation companies and individuals, none in the transportation of freight between commission merchants or other persons engaged in the transportation of freight, and individuals, in favor of either by abatement, draw-back or otherwise, nor shall any such company make any preference between the parties aforesaid in furnishing cars or motor power for the purpose aforesaid. Any company violating the provision of this Section shall forfeit or pay to the party injured the whole amount of such transportation charges." Neither the petition nor the proof contend that there was a discrimination between (a) the transportation company, and (b) an individual; nor between (a) a commission merchant, and (b) an individual. (b) This being a penal statute and a suit for a penalty thereunder, the statute must be strictly construed. State ex rel. v. Railway, 238 Mo. 622.

GRAVES, J.—This case has been certified to us by the Springfield Court of Appeals. Upon a motion for rehearing, in a *per curiam* opinion, it is said, that the Springfield Court of Appeals has concluded that their opinion is in conflict with the case of Hobart-Lee Tie Co. v. Stone, 135 Mo. App. 438, decided by the St. Louis Court of Appeals, and by order made certified the present case to this court for that reason.

The Court of Appeals in effect ruled that the plaintiffs' petition stated no cause of action under the statute relied upon, i. e. Section 3174, Revised Statutes 1909, now Section 9975, Revised Statutes 1919. It therefore affirmed the judgment *nisi,* which was for defendant.

The facts of the record are thus stated by the Court of Appeals:

"Plaintiff filed his petition in thirty-one counts to recover the penalty provided in Section 9975, Revised Statutes 1919. A trial before the court and a jury resulted in a verdict and judgment for the defendant. Unsuccessful in motion for new trial, plaintiff appealed.

"Plaintiff alleges in his first count that on July 1, 1920, and for a long time prior thereto, defendant maintained a public switch track running from its station in Caruthersville, a distance of about 300 yards, to the bank of the Mississippi River, and near which switch and the river bank plaintiff had for a long time been operating a saw mill; that the defendant has been for a long time prior to July 1, 1920, furnishing cars on said switch for plaintiff to load his lumber; that on or about July 18, 1920, plaintiff requested defendant to furnish him cars on said switch to ship lumber to Hayti, Missouri, and that defendant refused, but informed plaintiff that said switch had been leased to the Caruthersville Sand Company, and that if plaintiff desired cars to ship lumber he would have to take them on another switch. Plaintiff further alleges that he was compelled, by reason of such refusal to furnish him cars on the said switch, to haul his lumber from his mill to a much more distant switch at much extra expense; that the defendant permitted the sand company to use said switch, and denied plaintiff the use thereof; and that by reason of the premises defendant furnished the sand company superior facilities for the transportation of freight, in violation of Section 3174, Revised Statutes 1909 (now Section 9975, Revised Statutes 1919). Plaintiff prayed judgment on this count in the sum of $30, the amount of the freight charges on a car shipped July 18, 1920. The remaining counts are the same except as to the date of the shipment and the amount. In the aggregate plaintiff asked judgment for $930. The defendant answered by a general denial.

"The switch in question extends from near the depot in Caruthersville, in a northeasterly direction to or near

the river. It crosses the river levee, and a public road or street is between the levee and the river. Plaintiff's saw mill is on the river bank on what may be called the north side of the switch, and the sand company's sand bins are on the bank of the river and somewhat southeast of plaintiff's mill. Plaintiff's mill has been so located for some five years, and he and the public generally, including the sand company, have been using this switch. A portion of the switch at its river terminus had not been in repair for some time, how long is not clear, due to a cave-in of the river bank. On March 15, 1920, the sand company entered into a contract with defendant railway company by which defendant agreed to construct at the sand company's expense a spur leading from the switch in question. This spur connects with the southeasterly side of the switch 530 feet from the point where the switch connects with the main track near the depot, and said spur extends from the point of connection in an easterly direction a distance of 291 feet. The first 95 feet of this spur are on the right-of-way of defendant, and the remaining 196 feet are on the property of the sand company. The sand company is to pay for the upkeep of the whole spur, but defendant owns outright that part on the right of way. It is provided in the contract that defendant shall have the right at any time when in its opinion the business furnished by the sand company does not justify the maintenance of the spur, on giving thirty days notice in writing, to discontinue the use of the spur.

"This spur cost the sand company $1060, and J. A. Riggs, who constituted the sand company, testified that in 1913 he, under a contract like the one of March 15, 1920, built 200 feet on the main switch at a cost of $233. It would appear that this extension on the main switch track was to repair that part that had been wrecked by the cave-in of the river bank. The main switch track is about 900 feet long, and the sand company under the contract, so far as appears, had no special interest in the switch track except the 200 feet. The contract under

which the sand company extended the switch or repaired it was not put in evidence. The sand company extended the main switch track under the sand bins, and had its own motive power to move cars after they were placed on the switch track. By this means it could load six or eight cars daily, if they were placed on the switch for its use. It used the spur it built to place cars on after being loaded, so as to have them out of the way. If plaintiff used the switch the sand company would not have sufficient room for its cars. The Pierce Oil Company has its tanks on the east side of the switch track, but up near the depot, between the point where the switch track leaves the main track and the levee. The oil company uses this switch, and there is an understanding between the sand company and defendant that when the oil company is using the switch the sand company may not be accommodated with all the empty cars it may desire.

"Here is the situation as we see it. The sand company extended the switch track 200 feet in 1913. Plaintiff began using this switch, but not the 200 feet, to load his lumber in 1915, and continued to so use it, as did the general public, until July, 1920. The switch had been a public switch for 25 years, except for that portion, if any, which the sand company built anew or repaired in 1913. In March, 1920, the sand company had a private spur built connecting with this switch track, and in July, 1920, the defendant discontinued the whole switch track as a public switch, and converted it into a private switch, thereby compelling plaintiff to haul his lumber to a more distant switch, and at considerable expense. According to the contract of March 15, 1920, and the one the sand company claims to have for the 200 foot extension, there is no private switch except the 200 foot extension and spur built in 1920. At most this is all that both the contracts cover, and the remaining 700 feet of the main switch is private merely by a course of conduct on the part of defendant.

"Plaintiff makes several assignments of error, but

in our view it is necessary to consider but one question. Under the facts, and granting that plaintiff has been discriminated against in facilities, may he invoke the penalty provided in Section 9975, Revised Statutes 1919? This section reads as follows:

" 'Railways heretofore constructed, or that may hereafter be constructed in this state, are hereby declared public highways, and railroad companies common carriers. No railway company, corporation or association shall hereafter make any discrimination in charges or facilities in the transportation of freight or passengers between transportation companies and individuals, nor in the transportation of freight between commission merchants or other persons engaged in the transportation of freight and individuals, in favor of either, by abatement, drawback or otherwise, nor shall any such company, corporation or association, nor any lessee, manager or employee of any such company, corporation or association make any preference between the parties aforesaid in furnishing cars or motive power, for the purpose aforesaid. Any company, corporation or association, or manager, lessee or employee violating the provisions of this section, shall forfeit and pay to the party injured the whole amount of such transportation charged, to be recovered before any court of competent jurisdiction: Provided, that excursion or commutation tickets may be issued at special rates.' "

The concrete question is: Does the statute cover a case where the railway has discriminated against one *individual* in favor of another *individual?*

I. In its opinion the Court of Appeals discusses the statute above, and reaches the conclusion that such statute (although the basis of the action pleaded by plaintiff) has no application to the case. This because, the discrimination (if such there appeared in evidence) was a discrimination as between two individuals, and not between the parties named and classified by the statute. By the agreement for the private switch it appears that the Caruthersville Sand & Supply Company, was a Mis-

souri corporation. Of course, as a shipper it would be classed as an individual. It shipped sand and the plaintiff shipped lumber. The force of the opinion is spent upon the proposition that the statute does not apply where the discrimination is between two individual shippers. The ruling in Tie Co. v. Stone, 135 Mo. App. l. c. 458 et seq., is to the contrary. It discusses and passes upon the same statute. The only difference between the two cases is that the Tie Co. Case involves the use of land found to be a part of the depot grounds, and this case involves a switch. We agree with the ruling in the instant case that the track constructed by the sand company and leading off from the switch is the private property of the sand company. We also agree that the reconstructed portion of the old switch (done by the sand company and involving 200 of the 900 feet of the switch) may be a private switch. We say may be, because there might be a question as to that matter. But as plaintiff's mill was not on this 200 feet, it is really not material here. The opinion of the Springfield Court rules (1) that under the rule *ejusdem generis* the words *"or other persons"* used in the statute refers solely to a class of which "commission merchants" and the like constitute the class, and the ordinary individual shipper does not fall within the class, and (2) that under no construction of the language used in the statute can it be said that there was a legislative intent to cover discriminations between individual shippers. These matters were not elaborated in the Tie Co. Case, but are in the instant case. The result of the two opinions are clearly conflicting, and such was the final view of the Springfield Court of Appeals when the present case was certified here. Our view we take next.

II. It is clear that the statute covers both charges and facilities. A switch track for loading and unloading freight is clearly a facility within the meaning of the statute. The statute first inhibits discrimination in charges or facilities "between transportation companies and individuals." It is clear that this provision does not cover the action here involved. The inhibition is as to

discriminations between transportation companies on the one side and individuals on the other. Such are not involved here, and the statute being penal in character must be strictly construed. The only clause which could apply reads:

"Nor in the transportation of freight between commission merchants or other persons engaged in the transportation of freight and individuals, in favor of either, by abatement, drawback or otherwise, nor shall any such company, corporation or association, nor any lessee, manager or employee of any such company, corporation or association make any preference between the parties aforesaid in furnishing cars or motive power, for the purpose aforesaid."

To get at this matter we had better cut out all surplusage and get the vital question before us. Doing this the applicable portion of the statute would read: "No railway company . . . shall hereafter make any discrimination . . . in the transportation of freight between commission merchants or other persons engaged in the transportation of freight and individuals, in favor of either, by abatement, drawback or otherwise." The next clause of the portion which we have quoted in the first instance is limited to "the parties aforesaid" and so far as parties are concerned does not change the parties. "The parties aforesaid" are "commission merchants or other persons engaged in the transportation of freight" on the one side, and "individuals" on the other. The discrimination must occur as between these two classes, and the question is, does this portion of the stateute apply where the discrimination is as between two individual shippers. If the sand company was a commission merchant, clearly the statute would apply. But such is not the case. Does the use of the words "other persons" following the words "commission merchants" change the situation? If the words "other persons" were intended to cover individuals, then the clause would read: "between commission merchants or *individuals*

engaged in the transportation of freight and *individuals.*"

The Springfield Court of Appeals first discusses the rule of *ejusdem generis,* and rules that the words "other persons," following "commission merchants" as it does has the meaning of the words "other such like," and that the ordinary individual shipper is not covered. This meaning of the words "other persons" has support in the case of State v. Eckhardt, 232 Mo. l. c. 52. Aside from the application of the rule *ejusdem generis,* that court further says:

"But independent of the rule of *ejusdem generis,* we do not believe that the language of the statute will justify the construction that it was intended to apply where there is a discrimination between *individual* shippers, this because the very language itself points to the conclusion that the legislative aim was to prohibit discrimination between one class of shippers on the hand, and individuals on the other. Further, this is a penal statute and must be strictly construed. This statute with reference to the question here has not heretofore been construed, although it has been referred to and construed with reference to other phases not involved in the case at bar."

The Court of Appeals has overlooked a matter which to our mind settles this case. The first part of the section condemns "discrimination in charges or facilities," but it is confined to a discrimination "between transportation companies and individuals." Not only so, but the discrimination condemned is as to "charges or facilities."

In the second portion, the one under which this case must stand, if at all, the discrimination condemned is as "between commission merchants or other persons engaged in the transportation of freight and individuals." But the discrimination is limited to a discrimination "by abatement, drawback or otherwise." The word "facilities" does not appear here, nor can it be well read into this portion of the statute. The discrimination here con-

demned is one affecting freight charges which might be cut by rebates, drawbacks, or otherwise. This portion only goes to. freight charges, and inhibits the reduction of those charges by abatement, drawback or otherwise. The word "otherwise" in the connection used must have reference to charges and not to facilities. The purpose was to inhibit the reduction of freight charges by any device or method. So we conclude with the Springfield Court of Appeals, that the statute which is made the basis of the action has no application to the case pleaded or proven. This in addition to what that court has said. We need not go into the ramification of the rules *ejusdem generis.*

The judgment is affirmed. All concur; *James T. Blair, J.,* in Paragraph One .and in the result.