PEOPLE v CLARK

Docket No. 70969. Submitted July 17, 1984, at Lansing.—Decided
February 20, 1985.

Michael A. Clark was convicted, on his plea of guilty, of second-
degree murder, in exchange for dismissal of charges of first-
degree murder and conspiracy to commit murder. The Lenawee
Circuit Court, Kenneth B. Glaser, Jr., J., sentenced him to life
imprisonment and defendant appealed, alleging that he should
have been allowed to withdraw his guilty plea after the court
had decided to impose a life sentence, that the court improperly
maintained a policy of imposing life sentences for second-degree
murder, and that the sentence was excessive. *Held:*

1. While a defendant should be allowed to withdraw his
guilty plea where the sentencing court chooses not to abide by
a sentence agreement or sentence recommendation, in this case
there was no such agreement or recommendation. Therefore,
there was no promise regarding the sentence upon which
defendant could rely, and in fact the court emphasized to
defendant that he could be sentenced to life. In these circum-
stances, the failure to allow defendant an opportunity to with-
draw his plea was not error.

2. Defendant's plea bargain was not illusory or uncertain. A
plea arrangement is not required to include a sentence recom-
mendation.

3. 1978 Initiative Proposal B did not affect the statutory

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 501-504, 511.
  Right to withdraw guilty plea in state criminal proceedings where
    court refuses to grant concession contemplated by plea bargain.
    66 ALR3d 902.
[2] 21 Am Jur 2d, Criminal Law § 469.
[3] 60 Am Jur 2d, Penal and Correctional Institutions § 58 *et seq.*
  Withdrawal, forfeiture, modification or denial of good-time allow-
    ance to prisoner. 95 ALR2d 1265.
[4] 4 Am Jur 2d, Appeal and Error §§ 352, 355.
  21 Am Jur 2d, Criminal Law § 505.
[5] 21 Am Jur 2d, Criminal Law § 537.
[6] 5 Am Jur 2d, Appeal and Error § 938.
  21 Am Jur 2d, Criminal Law §§ 538-540.

provision that a defendant receiving a non-mandatory life sentence is eligible for parole consideration after serving ten years.

4. Defendant's failure to move in the lower court for permission to withdraw his plea waives the issue for appeal.

5. The record does not support defendant's allegation that the sentencing court was following any stated "policy" in imposing a life sentence.

6. Defendant's sentence is not so excessive as to amount to an abuse of discretion which shocks the conscience of the appellate court.

Affirmed.

1. CRIMINAL LAW — GUILTY PLEAS — SENTENCING.

A defendant who pleads guilty should be allowed to withdraw his plea where the sentencing judge refuses to abide by a sentence recommendation made by the prosecution; however, an opportunity to withdraw the plea need not be granted where no agreement or recommendation has been made and, therefore, there is no promise upon which the defendant can rely.

2. CRIMINAL LAW — GUILTY PLEAS.

A guilty plea may permissibly be based upon the dismissal of other charges, or upon defense counsel's prediction that the plea would result in a more lenient sentence than would be imposed in the event of a trial; there is no requirement that a plea arrangement include a sentence recommendation.

3. CRIMINAL LAW — SENTENCING — INITITATIVE PROPOSAL B — PAROLE.

1978 Initiative Proposal B, which eliminated allowances for good time, special good time and special parole for certain specified crimes, did not affect the statute providing that a defendant receiving a non-mandatory life sentence is eligible for parole consideration after serving ten years of his sentence (MCL 791.233b, 791.234; MSA 28.2303[3], 28.2304).

4. CRIMINAL LAW — GUILTY PLEAS — WITHDRAWAL OF GUILTY PLEA — APPEAL.

A defendant's failure to present a motion to the sentencing court to withdraw his guilty plea waives the issue on appeal.

5. CRIMINAL LAW — SENTENCING — INDIVIDUALIZED SENTENCES.

A trial court may not follow any stated policy which utilizes mandatory sentencing for crimes for which the Legislature has not required a minimum term of imprisonment.

6. CRIMINAL LAW — SENTENCING — EXCESSIVE SENTENCE.

    A claim of an excessive sentence will be reviewed to insure that the sentencing court did not abuse its discretion to the extent that it shocks the conscience of the appellate court.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Nathan T. Fairchild,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Atorney General, for the people.

State Appellate Defender (by *Herb Jordan),* for defendant on appeal.

Before: DANHOF, C.J., and D. E. HOLBROOK, JR., and C. W. SIMON, JR.,* JJ.

PER CURIAM. Defendant pled guilty to second-degree murder, MCL 750.317; MSA 28.549, in exchange for the dismissal of one count of first-degree murder, MCL 750.316; MSA 28.548, and one count of conspiracy to commit murder, MCL 750.157a; MSA 28.354(1). Defendant was sentenced to life imprisonment. He appeals as of right.

At two separate proceedings, the trial court informed defendant that the charge to which he was pleading guilty was punishable by a maximum sentence of life in prison and that he would not be eligible for parole. The court further advised defendant that he would not be eligible for probation and that the offense carried a minimum term of two years' imprisonment. The court then explained the benefit to defendant of a plea to second-degree murder:

*"The Court:* Now, do you understand that as the Department of Corrections and the Attorney General presently construe the state of the law, that if I do sentence you to life imprisonment, that that would be a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

mandatory sentence and you couldn't be paroled? Do you understand that?

"*The Defendant:* Yes, sir.

"*The Court:* So, really all you're getting under the present state of the law, you're getting the Count II nolle prossed; in other words, thrown out, which is the conspiracy. You can't have a conspiracy except for first degree murder. So, if you're pleading guilty to second degree murder, you couldn't be found guilty of conspiracy. Do you understand that? The Prosecutor would dismiss it.

"*The Defendant:* Yes, sir.

"*The Court:* Okay. The second thing is that—you're getting is the possibility that you might convince me or your attorney might to give you something less than a life sentence. Do you understand that?

"*The Defendant:* Yes, sir.

"*The Court:* Do you understand that's not—I'm not saying that I'm going to do it and, of course, it's a very great likelihood it's going to be a life sentence probably? Do you understand that?

"*The Defendant:* Yes, sir."

At the second proceeding, the court advised defendant that the benefit of a plea to second-degree murder was the possibility that he would be sentenced to "something less than life imprisonment". At the same time, however, the court cautioned defendant that he could not "count on" receiving less than life imprisonment.

After learning that defendant intended to plead guilty to second-degree murder, the trial judge informed defendant that "you understand, as I told you the other day, now most people that I've sentenced for murder or have been involved with when I was prosecutor or anything else that got second degree murder, most of them got a life sentence". Later in the proceeding, the court reiterated that "most of the people I've sentenced has [sic] been life imprisonment on second degree. Do

you understand that?" Defendant was subsequently sentenced to life imprisonment.

At sentencing, defense counsel argued that several mitigating factors should be taken into consideration in imposing sentence. Counsel pointed out that defendant was far less culpable than his co-defendant and that he committed the act under the strong influence of the co-defendant. Defendant's remorse as well as his lack of a prior criminal record were emphasized as legitimate reasons to impose less than life imprisonment. The court then stated the following:

*"The Court:* * * * either of you want to say? Well, I'm not going to drag this out. It's pretty short and fair.

"I'm going to sentence you to life imprisonment. I don't want you to think, though, I disagree with Mr. Crudder (Defense Counsel). I think much of what Mr. Crudder said is borne out and substantiated by the last couple of paragraphs of Dr. Singer's, the licensed clinical psychologist, report. You're clearly a leader, never would be a follower *[sic]*. You never would be able to plan a crime. And you were certainly acting strictly under the leadership of Charlie Glisson, who was a person that was supplying you drugs, apparently had no other relationship than that.

"However, you did commit a very brutal crime, very brutal crime, one that's shocking really, on a person for really no reason than that Charlie Glisson wanted you to. You may or may not have known you were going to follow through on it when you got there. I don't know. But I'm satisfied that you're sincerely sorry for it now. I'm satisfied that your level of intellectual functioning will also place you in the role of a follower. And that you are certainly in many ways less culpable than Mr. Glisson.

"However, there are four factors that the Court should consider. I'm referring, Mr. Crudder, to *People* against *Snow,* 386 Mich 586 [194 NW2d 314 (1972)] at Page 592. And I have considered giving you a lesser sentence, in the range of 20 to 40 years, which would

give you a chance to be out later on in your life. I think that would be sufficient for the first factor, which is rehabilitation of the offender. Any rehabilitation that was going to take place would certainly take place in that time.

"Now, retribution is factor No. 3. Considering the less culpability that I've already alluded to by reason for your lack of intellectual functioning would be satisfied, I think, by that in your case.

"Deterrence of others is No. 4. That would be satisfied in your case.

"But I can't—I can't justify having you loose. There's always going to be Charlie Glissons out there and you're always going to remain manipulatable. You have demonstrated that you can be manipulated by a leader to do about anything.

"And I think the protection of society in and of itself far outweighs those other three factors.

"And I would prefer to give you something less, but I feel that it would be—it would not be right for the rest of society for them to have—to have you in their midst any further.

"So, accordingly, the Court sentences you to life imprisonment with the State Department of Corrections."

Defendant appeals, arguing that, as a matter of policy, he should have been allowed to withdraw his plea of guilty to second-degree murder after the trial court had decided it would impose a life sentence but before he was actually sentenced to such, that the lower court improperly maintained a "policy" that life sentences be imposed for convictions of second-degree murder, and that the lower court abused its discretion in sentencing defendant to life in prison following his plea of guilty to second-degree murder. We affirm.

Defendant's first argument is posited on the Supreme Court's decision in *People v Killebrew,* 416 Mich 189; 330 NW2d 834 (1982). Defendant

argues that, as a matter of policy, a sentencing judge should allow a defendant the opportunity to withdraw his plea of guilty to second-degree murder where, as here, the plea was obtained in exchange for the dismissal of a first-degree murder charge and the judge nevertheless intends to impose a nonparolable life sentence. We do not find the instant case to be controlled by the holding or the rationale of *Killebrew, supra.*

The operative language in *Killebrew* is as follows:

"To most defendants, the distinction between a sentence agreement and a sentence recommendation is little more than a variation in nomenclature.

"A full understanding of the consequences of a plea is impossible where the defendant, believing that he has negotiated a specific length of sentence, tenders his guilty plea, only to find that he is bound by the act of self-conviction, but the trial judge is free to impose any sentence within the statutory range.

"However, it is not our intention to circumscribe the judge's statutorily granted sentencing discretion.

"Therefore, we now hold that if the plea agreement offered to the court by the prosecutor and defendant includes a non-binding prosecutorial recommendation of a specific sentence, the judge may accept the guilty plea (after consideration of the presentence report), yet refuse to be bound by the recommended sentence. The judge retains his freedom to choose a different sentence. However, the trial judge must explain to the defendant that the recommendation was not accepted by the court, and state the sentence that the court finds to be the appropriate disposition. The court must then give the defendant the opportunity to affirm or withdraw his guilty plea." 416 Mich 209-210.

As the above language in *Killebrew* illustrates, the Supreme Court was concerned that most defendants do not understand the distinction between a firm sentence agreement and a mere

sentence recommendation. Therefore, the sentencing judge's refusal to abide by a sentence *recommendation* should be accompanied by an opportunity for the defendant to withdraw his plea. Here, however, neither a sentence agreement nor a recommendation was promised, made or incorporated into the plea bargain. Indeed, the lower court went to great pains to emphasize that defendant could still be sentenced to life in prison. Although the *Killebrew* Court cautioned that "most defendants rely on the prosecutor's ability to secure the sentence when offering a guilty plea[, and] [t]his is true even when the court specifically admonishes the defendant that it is not bound by the prosecutor's recommendation", 416 Mich 208, there was never any promise here upon which defendant could rely. Since *Killebrew* was primarily based upon the notion of fairness as it relates to a defendant's reliance on the sentence recommendation, we find the absence of any recommendation and accompanying ground for reliance a significant factor.

Furthermore, defendant's bargain was not illusory or uncertain. The conspiracy charge, along with the first-degree murder charge, was dismissed in exchange for defendant's plea. There is no requirement that a plea arrangement include a sentencing recommendation. It is permissible for a plea to be based not only on the dismissal of other charges, but also upon "defense counsel's *prediction* that the judge will sentence a defendant who pleads guilty more leniently than one who goes to trial". (Emphasis added.) *Killebrew, supra,* p 203, fn 6, discussing *Brady v United States,* 397 US 742; 90 S Ct 1463; 25 L Ed 2d 747 (1970). Here, we must assume that defendant's decision to plead guilty was based on these two considerations, since defendant was never led to believe *by the prose-*

*cutor or the court* that he would receive a reduced sentence.

We also note that defendant's claim of error is premised upon a misinterpretation of 1978 Initiative Proposal B, enacted as MCL 791.233b; MSA 28.2303(3), as well as misplaced reliance upon 1979 OAG No 5583, p 438 (October 16, 1979). We have recently held in *People v Waterman,* 137 Mich App 429; 358 NW2d 602 (1984), that Proposal B leaves intact the provisions of MCL 791.234; MSA 28.2304 which provide that a defendant receiving a nonmandatory life sentence is eligible for consideration for parole once he has served a minimum of ten calendar years of his sentence. Thus, defendant's bargain was not illusory.

Finally, we note that the record does not indicate that defendant ever made a motion before the sentencing court to vacate his sentence and withdraw his plea. In this connection, the *Killebrew* Court stated:

"[The procedures we adopt are] quite similar to Federal Rule of Criminal Procedure 11(e)(1)-(4), except that under our system, when the judge rejects the recommended sentence, the defendant may affirm or withdraw his plea, whereas under the federal system, the defendant does not have the option to withdraw the plea.

\*   \*   \*

"The rules articulated in this opinion will be applied: (1) to all future trial court decisions where *the defendant moves the sentencing court* to vacate the sentence and withdraw the plea; (2) to all appeals or applications for leave to appeal filed prior to the date of this opinion where the issue is properly raised; and (3) to the two instant cases." (Emphasis added.) 416 Mich 212.

Thus, this issue has not been preserved on appeal.

Moreover, because a *Killebrew* issue is not in-

volved (because the trial court did not disregard a sentence recommendation), even under general appellate principles defendant's failure to move below to withdraw his plea waives this issue on appeal. *People v Baugh,* 127 Mich App 245; 338 NW2d 199 (1983).

Defendant's next contention is that the lower court impermissibly relied upon a "sentencing policy" whereby defendants convicted of second-degree murder would receive life sentences. Defendant is correct that it is improper for a sentencing judge to follow a stated "policy" which runs afoul of the policy of individualized sentencing. Any such practice which utilizes mandatory sentences for crimes not singled out by the Legislature as requiring a minimum term of imprisonment is improper. *People v Chapa,* 407 Mich 309; 284 NW2d 340 (1979). We disagree, however, that such was done in the present case.

A review of the entire record convinces us that the trial judge's statements—that in "great likelihood it's going to be a life sentence" and that "most people * * * that got second-degree murder, most of them got a life sentence"—did not reflect sentencing policy. Rather, the trial judge was concerned that defendant be cognizant of the fact that a plea of guilty would not obviate the possibility that he could still receive a life sentence. The judge did not abdicate his sentencing discretion.

Defendant's final claim of error is that his sentence was excessive. Pursuant to *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), this Court will review the trial court's exercise of discretion at sentencing to insure that there was no abuse of that discretion "to the extent that it shocks the conscience of the appellate court". 417 Mich 550. We find no such abuse.

The trial court, as borne out in the lengthy

quotation from the sentencing transcript repro-
duced above, considered the proper factors. See
*Coles, supra,* p 550. In light of the considerations
enumerated by the trial court and the fact that
the instant crime was particularly heinous (the
victim was beaten to death with a tire iron be-
cause he was suspected of being a narcotics agent),
we cannot say that defendant's sentence shocks
our conscience.

Affirmed.