JULES STAPLES *v.* PAUL M. PALTEN ET AL.
(13647)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and GLASS, Js.

Argued December 12, 1989—decision released March 13, 1990

*Michael S. Wagner,* special public defender, for the appellant (petitioner).

*Mitchell S. Brody,* assistant state's attorney, for the appellees (respondents).

GLASS, J. On April 14, 1988, the petitioner, Jules Staples, pursuant to a substitute information, pleaded guilty to assault on a police officer, in violation of General Statutes § 53a-167c, and admitted he had violated his parole. No agreement as to sentencing, however, existed between the state and the petitioner. On June 27, 1988, the court, *Steinberg, J.,* imposed a total effective sentence of ten years, execution suspended after six years, and five years probation. Pursuant to General Statutes § 51-195,[1] the petitioner filed an application for review of his sentence before the Sentence Review Division of the Superior Court. On January 24,

---

[1] "[General Statutes] Sec. 51-195. APPLICATION FOR REVIEW OF SENTENCE. Any person sentenced on one or more counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date such sentence was imposed or if the offender received a suspended sentence with a maximum confinement of three years or more, within thirty days of revocation of such suspended sentence, except in any case in which a different sentence could not have been imposed or in any case in which the sentence or commitment imposed resulted from the court's acceptance of a plea agreement or in any case in which the sentence imposed was for a lesser term than was proposed in a plea agreement, file with the clerk of the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division. Upon imposition of sentence or at the time of revocation of such suspended sentence, the clerk shall give written notice to the person sentenced of his right to make such a request. Such notice shall include a statement that review of the sentence may result in decrease or increase of the term within the limits fixed by law. A form for making such application shall accompany the notice. The clerk shall forthwith transmit such application to the review division and shall notify the judge who imposed the sentence. Such judge may transmit to the review division a statement of his reasons for imposing the sentence, and shall transmit such a statement within seven days if requested to do so by the review division. The filing of an application for review shall not stay the execution of the sentence."

1989, the Sentence Review Division dismissed the petitioner's application on the ground that he had entered a "plea agreement" within the meaning of § 51-195, and, therefore, the Sentence Review Division lacked jurisdiction to hear his application.

The petitioner has brought this writ of error claiming that the Sentence Review Division[2] erred in declaring that the definition of a "plea agreement," for the purposes of § 51-195, includes a plea of guilty that is entered with no agreement as to a specific sentence. The petitioner, therefore, maintains that this court should set aside the Sentence Review Division's judgment of dismissal, and order it to rehear his application for review.

Section 51-195 mandates that sentence review[3] shall be available to any person receiving a sentence of con-

---

[2] The named respondent, Paul M. Palten, is executive secretary of the Sentence Review Division of the Superior Court of the judicial district of Hartford. The three judge panel of the Sentence Review Division consisted of Hon. Francis R. Quinn, Hon. Joseph J. Purtill and Hon. Anne C. Dranginis.

[3] The Sentence Review Division of the Superior Court was created by statute in 1957 pursuant to the recommendation of a special committee appointed by the Governor to study causes of prison unrest. The committee reported that the morale of many inmates, and consequently their desire for rehabilitation, is compromised by the belief that there is statewide inequality in the sentences imposed by different judges for the same crime. First Interim Report of the Governor's Prison Study Committee (Nov. 19, 1956), Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 2, 1957 Sess., p. 377, on House Bill No. 276. The committee concluded that "[a]s long as a prisoner feels that he has been denied review of a sentence which he deems unfair or unduly harsh he remains a source of trouble in the prison system and efforts toward rehabilitation are seriously impeded." Id.

The duties of the Sentence Review Division are set forth in General Statutes § 51-196, which reads as follows: "REVIEW. DECISION. The review division shall, in each case in which an application for review is filed in accordance with section 51-195, review the judgment so far as it relates to the sentence or commitment imposed, either increasing or decreasing the penalty, and any other sentence imposed on the person at the same

finement of three years or more, "except in any case in which a different sentence could not have been imposed or in any case in which the *sentence* or commitment imposed resulted from the court's acceptance of a *plea agreement* or in any case in which the sentence imposed was for a lesser term than was proposed in a plea agreement." (Emphasis added.) The petitioner argues that his agreement simply to plead guilty, absent an agreement as to a specific sentence, does not fall within the "plea agreement" exception of § 51-195. We agree.

The state argues, however, that the petitioner did enter into a "plea agreement" for the purposes of

time, and may order such different sentence or sentences to be imposed as could have been imposed at the time of the imposition of the sentence under review, or may, in the case of a reformatory commitment, modify the conditions of commitment by ordering its suspension for such terms and upon such conditions as said division may in its discretion order, or may decide that the sentence or commitment under review should stand. In reviewing any judgment, said division may require the production of presentence or precommitment reports and any other records, documents or exhibits connected with such review proceedings. If the review division orders a different sentence or disposition of the case, the court sitting in any convenient county or circuit shall resentence the defendant or make any other disposition of the case ordered by the review division. Time served on the sentence reviewed shall be deemed to have been served on the sentence substituted. The decision of the review division in each case shall be final and the reasons for such decision shall be stated therein. The secretary of the review division shall act as its clerk or, if there is no such secretary, the clerk of the superior court for the judicial district in which the review division is meeting shall act as the clerk of the division. The acting clerk of the review division shall send the original of each decision to the clerk of the court for the judicial district where the judgment was rendered and a copy thereof to the chief justice, the judge who imposed the sentence or commitment reviewed, the person sentenced or committed, the principal officer of the correctional institution in which he is confined and the reporter of judicial decisions, who shall select therefrom for publication such decisions as he deems will be useful as precedents or will serve the public interest and shall prepare them for publication in the manner in which decisions of the supreme court are prepared. Decisions thus prepared for publication shall be published in the Connecticut Law Journal and, if the reporter of judicial decisions so directs, in the Connecticut Supplement."

§ 51-195. Specifically, the state contends that the petitioner entered a plea agreement whereby he received a reduction in the charges against him in consideration of his agreeing to be sentenced to a particular range of years. Section 51-195 mandates, however, that the *sentence* that is imposed must *result* from the court's acceptance of a plea agreement, and we discern no such causal connection between the specific sentence received by the petitioner and his agreement simply to plead guilty.

Although "plea agreement" is not defined in § 51-195, the principles of statutory construction dictate that "plea agreement," as used in § 51-195, means an agreement entailing a sentence of a specific term of years. First, " '[w]hen a statute creates an exception to a general rule, it is to be construed strictly and its language is not to be extended beyond its evident intent.' *Bickart* v. *Sanditz,* 105 Conn. 766, 772, 136 A. 580 [1927]; *Willoughby* v. *New Haven,* 123 Conn. 446, 454, 197 A. 85 [1937]." *Kulis* v. *Moll,* 172 Conn. 104, 110, 374 A.2d 133 (1976); see *Conservation Commission* v. *Price,* 193 Conn. 414, 424, 479 A.2d 187 (1984); *Aaron* v. *Conservation Commission,* 183 Conn. 532, 549, 441 A.2d 30 (1981). Second, a " 'remedial' statute is to be construed in favor of those whom it was intended to protect." *Wagner Seed Co.* v. *Bush,* 709 F. Sup. 249, 252 (D.D.C. 1989); see *E.E.O.C.* v. *Pattin-Marion, A Div. of Eastern Co.,* 588 F. Sup. 41, 45 (S.D. Ill. 1984); *State* v. *Avcollie,* 174 Conn. 100, 110–11, 384 A.2d 315 (1977); *Hartford Fire Ins. Co.* v. *Brown,* 164 Conn. 497, 503, 325 A.2d 228 (1973).

In addition, under the maxim of "noscitur a sociis," the meaning of a particular word or phrase in a statute is ascertained by reference to those words or phrases with which it is associated. See *Schreiber* v. *Burlington Northern, Inc.,* 472 U.S. 1, 8, 105 S. Ct. 2458, 86 L. Ed. 2d 1 (1985); *General Electric Co.* v.

*Occupational Safety & Health Review Commission,* 583
F.2d 61, 65 (2d Cir. 1978); *United States* v. *LaBrecque,*
419 F. Sup. 430, 434 (D.N.J. 1976). In *Owen of Geor-
gia, Inc.* v. *Shelby County,* 648 F.2d 1084, 1092 (1981),
the Sixth Circuit Court of Appeals further elucidated
this principle stating that " 'noscitur a sociis' . . .
acknowledges that general and specific words are
associated with and take color from each other, restrict-
ing general words to a sense . . . less general."
Therefore, in ascertaining the meaning of "plea agree-
ment" in § 51-195, we must look to the other two listed
exceptions. In particular, § 51-195 also excepts "any
case in which a different sentence could not have been
imposed" or "any case in which the sentence imposed
was for a lesser term than was proposed in a plea agree-
ment." It is clear that these two exceptions contem-
plate sentences of specific terms of years, and not
sentences that simply entail a range of years.

Therefore, given the result of the application of
"noscitur a sociis," and given the fact that the "plea
agreement" exception is to be construed liberally in
favor of its intended beneficiary, we hold that "plea
agreement" for the purposes of § 51-195 means an
agreement encompassing a sentence of a specific term
of years.[4] Thus, even if the state is correct in assert-

---

[4] Furthermore, the "plea agreement" exception was added to General
Statutes § 51-195 by No. 78-191 of the 1978 Public Acts. During the House
floor debate on the amendment, Representative Ernest N. Abate explained:
"What we don't want to do, we don't want to allow for review of sentence
and change of sentence by the Sentence Review Commission *after the sen-
tence was negotiated as part of a plea."* (Emphasis added.) 21 H.R. Proc.,
Pt. 5, 1978 Sess., pp. 1944–45. Again, there is nothing in the record before
this court that supports the assertion that the actual sentence that the peti-
tioner received was the result of a negotiated plea.

Furthermore, given that the expressed purpose of the Sentence Review
Division is to prevent prison unrest that arises from inmates' beliefs that
there is statewide inequality in the sentences imposed by different judges
for the same crime, it is apparent that this purpose is not furthered by deny-
ing review to petitioners who simply have pleaded guilty without an agree-
ment as to sentence. See footnote 3, supra; *State* v. *Nardini,* 187 Conn.

ing that the petitioner received a reduction in the charges against him in consideration of his agreeing to be sentenced to a particular range of years, this would still not constitute a "plea agreement" for the purposes of § 51-195 because the petitioner would still not have agreed to a sentence of a specific term of years.

There is error and the case is remanded to the Sentence Review Division for further proceedings.

In this opinion PETERS, C. J., and SHEA, J., concurred.

ARTHUR H. HEALEY, J., with whom CALLAHAN, J., joins, dissenting. I respectfully disagree with the majority that the term "plea agreement" for the purposes of General Statutes § 51-195 "means an agreement encompassing a sentence of a specific term of years."

I first note that the majority, after observing that "plea agreement" is not defined in § 51-195, states that principles of statutory construction "dictate" that that term as used in § 51-195 "means an agreement entailing a sentence of a specific term of years." Accepted and applicable principles of statutory construction do not, I submit, dictate the result reached by the majority.

Initially, the sentence review division's (division) argument that the petitioner entered a plea agreement whereby he received à reduction in the charges against him, in consideration for his agreeing to be sentenced for a particular range of years, has not persuaded the majority. The record shows that at the time the petitioner appeared before the division Hon. Francis J. Quinn said: "Well, serious charges against [the petitioner] were dropped and he was allowed to plead to a lesser offense. That, along with the agreement of no

109, 118–19, 445 A.2d 304 (1982). In other words, if two inmates have pleaded guilty to the same crime and have received widely disparate sentences, then the same potential for unrest exists as if the inmates were sentenced after conviction.

specific recommendation, is a plea agreement." The record before us also shows that the original information was in three counts: assault in the first degree in violation of General Statutes § 53a-59 (a class B felony); reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a class A misdemeanor); and interfering with a police officer in violation of General Statutes § 53a-167a (a class A misdemeanor).

Counsel for the petitioner who argued his appeal before this court also represented the petitioner not only on the original three count information in the trial court but also at the sentencing for which sentence review was requested. At oral argument before this court, questions from the bench elicited further information from petitioner's counsel. The following, which we may properly consider,[1] developed from that questioning. At the time of the petitioner's arrest, he was also on probation following his adjudication as a youthful offender. There were, admittedly, discussions and negotiations concerning a disposition. As a result, the petitioner agreed to and did plead guilty to a substitute information charging him with assault on a police officer in violation of General Statutes § 53a-167c (a class C felony), as well as pleading guilty to two counts of violation of his probation. In return, the state agreed to and did nolle the original class B felony count and the two class A misdemeanor counts. In addition, the state and the petitioner agreed that no specific sentence

---

[1] Oral concessions developed during oral argument before this court may properly be used even where the trial record is silent. *Hirsch* v. *Braceland,* 144 Conn. 464, 469, 133 A.2d 898 (1957); see W. Moller & W. Horton, Connecticut Practice-Practice Book Annotated, Supreme Court and Appellate Court Rules and Forms (1989) p. 184, § 4107, comment.

In addition, not infrequently, we have utilized concessions of counsel made in oral argument before this court. See, e.g., *Sanchez* v. *Warden,* 214 Conn. 23, 570 A.2d 673 (1990); *State* v. *Stange,* 212 Conn. 612, 624, 563 A.2d 681 (1989); *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 540 n.22, 562 A.2d 1100 (1989); *Ruskewich* v. *Commissioner of Revenue Services,* 213 Conn. 19, 21 n.3, 566 A.2d 658 (1989).

would be recommended to the sentencing judge. At sentencing, however, the state did argue for incarceration and the petitioner argued for a lesser sentence than what was in fact imposed. On the assault count, the petitioner was sentenced to a term of ten years imprisonment, the execution of which was suspended after five years and five years probation. In addition, he was given a sentence of six months imprisonment on each of two counts of violation of his probation under General Statutes § 53a-32 to be served consecutively. The sentences on the violation of probation were then ordered to be served consecutively to the sentence on the assault count.

It is this disposition that the majority has concluded is not a "plea agreement" under § 51-195 because that term "means an agreement encompassing a sentence of a specific term of years." In a word, because this disposition package did not include a recommendation for a specific sentence, it was not a "plea agreement" under § 51-195 and, accordingly, the division erroneously dismissed his petition.

The majority explicitly sets out certain principles of statutory construction upon which it bases its analysis. The first is that " ' "[w]hen a statute creates an exception to a general rule, it is to be construed strictly and its language is not to be extended beyond its evident intent." . . .' " I have no problem with this as a statement of one of a number of rules of statutory construction even where, as in this case, the statute is remedial. See *State* v. *Nardini,* 187 Conn. 109, 118–19, 445 A.2d 304 (1982). Another statutory rule of construction used by the majority is the invocation and application of the rule of "noscitur a sociis."

It is suggested, however, that the use of other rules of construction is appropriate here. One court aptly observed that "while [it was] not unmindful of the gen-

eral rule that exceptions to remedial statutes are to be construed narrowly, they should also be construed sensibly, and to give effect to statutory purposes." *Brennan* v. *Valley Towing Co.,* 515 F.2d 100, 110 (9th Cir. 1975). We have even said that "[a] proviso [in a statute] should be 'so interpreted as not to destroy the remedial processes intended to be accomplished by the enactment.' *Shilkret* v. *Musicraft Records, Inc.,* 131 F.2d 929, 931 (2d Cir. 1942), cert. denied, 319 U.S. 742, 63 S. Ct. 1030, 87 L. Ed. 1699 [1943]; see also 73 Am. Jur. 2d, Statutes, § 321." *State* v. *Avcollie,* 174 Conn. 100, 110–11, 384 A.2d 315 (1977); see *Spokane & Inland Empire R.R. Co.* v. *United States,* 241 U.S. 344, 350, 36 S. Ct. 668, 60 L. Ed. 1037 (1916). Moreover, in construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result. *King* v. *Board of Education,* 203 Conn. 324, 332–33, 524 A.2d 1131 (1987); *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983); *Stoni* v. *Wasicki,* 179 Conn. 372, 376–77, 426 A.2d 774 (1979). In ascertaining legislative intent, we look to the history of the statute, the policy underlying it and the circumstances which brought about its enactment. *Gentry* v. *Norwalk,* 196 Conn. 596, 606, 494 A.2d 1206 (1985); see *State* v. *Nardini,* supra. "It is a cardinal rule of statutory construction that a statute is not to be construed so as to thwart its purpose." *Narel* v. *Liburdi,* 185 Conn. 562, 571, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 443 (1982); *State* v. *Roque,* supra, 151; *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 31, 357 A.2d 498 (1975).

In speaking to the rule of "noscitur a sociis," the United States Supreme Court has said: "That a word may be known by the company it keeps is, however, not an invariable rule, for the word may have a character of its own not to be submerged by its association.

Rules of statutory construction are to be invoked as aids to the ascertainment of the meaning or application of words otherwise obscure or doubtful." *Russell Motor Car Co.* v. *United States,* 261 U.S. 514, 519, 43 S. Ct. 428, 67 L. Ed. 778 (1923); *International Salt Co.* v. *Geostow,* 697 F. Sup. 1258 (W.D.N.Y. 1988), aff'd, 878 F.2d 570 (2d Cir. 1989). The formalistic application of this rule should be avoided. *Russell Motor Car Co.* v. *United States,* supra; 2A J. Sutherland, Statutory Construction (4th Ed. Sands. 1984) § 47.16.

From the circumstances surrounding the petitioner's decision to plead guilty, it is evident to me that he did so as the result of a "plea agreement" as that term is used in § 51-195. The majority correctly observes that "plea agreement" is not defined in § 51-195 and says that to do so, it must look to the other two exceptions listed in that statute. Then, "given" the application of "noscitur a sociis" and the requirement of strict construction, it concludes that "plea agreement" in § 51-195 "means an agreement encompassing a sentence of a specific term of years." This result is flawed by the analysis, the application of rules of statutory construction and common sense. Moreover, it thwarts the statutory purpose, especially that of the 1978 amendment to § 51-195, Public Acts 1978, No. 78-191.

It is useful, in arriving at the construction of § 51-195, to consider certain aspects of plea agreements. The terms "plea agreement," as well as "plea bargain," are familiar and not undefined terms in the administration of criminal justice in this country.[2] The United States

---

[2] The Connecticut Practice Book § 691 et seq. involve possible plea agreements. Section 692, which discusses such possible agreements "[u]pon plea of guilty or nolo contendere," provides: "The parties may agree that the defendant will plead guilty or nolo contendere on one or more of the following conditions:

"(1) That the prosecuting authority will amend the information to charge a particular offense;

Supreme Court has pragmatically observed: "Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." *Blackledge* v. *Allison,* 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977); see *Bordenkircher* v. *Hayes,* 434 U.S. 357, 361, 98 S. Ct. 663, 54 L. Ed. 2d 604, reh. denied, 435 U.S. 918, 98 S. Ct. 1477, 55 L. Ed. 2d 511 (1978). *Bordenkircher* also states that "[p]lea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial. . . . [In plea bargaining] the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges and thus by fear of the possibility of a greater penalty upon conviction after trial." *Bordenkircher* v. *Hayes,* supra, 363. A threat of a heavier sentence after conviction at trial is essential to plea bargaining. *United States* v. *Allen,* 668 F. Sup. 969, 976 (W.D. Pa. 1987), aff'd, 845 F.2d 1016 (3d Cir. 1988). A "plea agreement" comes about when the prosecutor and the accused exchange promises to do or refrain from doing certain acts. *People* v. *Davis,* 94 Ill. App. 3d 809, 811, 419 N.E.2d 724 (1981); see *Gray* v. *State,*

---

"(2) That the prosecuting authority will nolle, recommend dismissal of, or not bring certain other charges against the defendant; or

"(3) That the sentence or other disposition will not exceed specified terms or that the prosecuting authority will recommend a specific sentence, not oppose a particular sentence, or make no specific recommendation."

Section 692 is drawn from the Uniform Rules of Criminal Procedure, the American Bar Association Standards and the Federal Rules of Criminal Procedure (see Fed. R. Crim. P. 11 [e] [1]). L. Orland, Connecticut Criminal Practice (1981).

The petitioner does not consider the Practice Book provisions as anything more than guidelines as to what may be plea agreements, and, in any event, he maintains that they do not affect the statute. It is interesting, however, to note that the disposition of the criminal charges in this case involves elements of each of the three subdivisions of § 692.

38 Md. App. 343, 356, 380 A.2d 1071 (1977). Such an agreement or plea bargain ordinarily contemplates that the accused will plead guilty as a quid pro quo for a reduction of the charge against him. *State* v. *Andrews,* 282 Minn. 386, 391 n.4, 165 N.W.2d 528 (1969); *State* v. *Stroh,* 91 Wash. 2d 580, 586, 588 P.2d 1182 (1979). There is no requirement that a plea arrangement include a specific sentencing recommendation. *People* v. *Clark,* 141 Mich. App. 1, 8–9, 366 N.W.2d 62 (1985); *Howard* v. *Texas,* 690 S.W.2d 252, 255 (Tex. Crim. App. 1985). It is crucial to remember that when a guilty plea rests in a significant part upon promises of the prosecuting attorney made to the accused, these promises must be fulfilled. *Santobello* v. *New York,* 404 U.S. 257, 267, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971).

The obvious intent and dominant purpose of § 51-195 is to grant sentence review except in the three situations set out in the statute. The addition of the two exceptions by the 1978 legislature was made after the constitutional legitimacy of plea bargaining had been recognized by the United States Supreme Court—a significant circumstance that had not existed when the statute originally had been enacted twenty years earlier. From the common sense reading of § 51-195 after the 1978 amendment, tenets of statutory construction need not be invoked to demonstrate that the evident intent was to deny sentence review to defendants who had bargained and negotiated with the prosecutors for the most beneficial arrangement they could obtain in disposition of criminal charges against them in return for their plea of guilty. Such an agreement or "deal" could have a number of components, as it did here. In this case, the petitioner's exposure to prison time was greatly reduced, his plea was to a lower charge, other charges were nolled[3] and it was agreed

---

[3] In addition, at oral argument, petitioner's counsel "suggested" that the fact that the petitioner filed an affidavit with the state that he had enrolled

that no specific sentence was to be recommended and that both the state and the petitioner were to be allowed to argue the issue of the extent of the sentence. By pleading guilty, after assessing the benefits of the agreement, the petitioner cannot now maintain that, absent a specific sentence recommendation, he did not understand that he was going before the sentencing court and subjecting himself to a sentence within the statutory range of the reduced exposure the plea agreement conferred upon him. That was how the matter of sentencing was presented to the trial court and how it obviously accepted it. Actually, the petitioner only received a five year sentence on the substitute felony charge; the maximum on that charge was ten years. See General Statutes §§ 53a-35a, 53a-167c. The sentence imposed upon the petitioner "resulted from the court's acceptance of [the] plea agreement." General Statutes § 51-195. To borrow a metaphor, "[a]fter you have brushed the foam off the beer"; *Horton* v. *Meskill,* 172 Conn. 615, 658, 376 A.2d 359 (1977) (*Loiselle, J.,* dissenting); the conclusion reached would permit the petitioner to keep the substantial benefit he had already obtained from the state on the way in to his sentencing by the court and still have an opportunity to contest his sentence afterward before the sentence review division.

The rule of strict construction of exceptions and "noscitur a sociis," as explicated and applied by the majority, do not dictate the result reached. It does not follow that, because the other two exceptions under § 51-195 contemplate sentences of specific terms of years, the exception at issue requires that "plea agreement," as used there, must mean "an agreement encompassing a sentence of a specific term of years."

in a drug treatment program and admitted that he was drug dependent "played a part" in the prosecuting attorney's decision to let the petitioner plead to lesser charges.

If it did, it would mean that the plea agreement in this case, as well as in others that had also conferred benefits on an accused, would let them keep the benefit of that agreement, to the detriment of the state, and would also let them thereafter obtain the benefit of sentence review. This view thwarts the purpose of § 51-195 and allows those whom the legislature believed should not be permitted sentence review to gain its benefit. I respectfully suggest that this does not make for the reasonable and rational result that the legislature intended by amending the statute in 1978. *Stoni* v. *Wasicki,* supra, 376–77. The result reached suggests as deserving of repetition the observation of Judge (later Justice) Cardozo in *In re Rouss,* 221 N.Y. 81, 91, 116 N.E. 782 (1917), cert. denied, 246 U.S. 661, 38 S. Ct. 332, 62 L. Ed. 927 (1918), where he said: "Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be construed, if possible, that absurdity and mischief may be avoided."

Therefore, I respectfully dissent.