[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Michael Guty, filed a complaint against the defendants, John Antonino, Girard Antonino and Leo Antonino, dba Charles Oldsmobile-Toyota-Cadillac[1]
(collectively the defendant), in which he alleges fraudulent misrepresentation in the first count and violations of the Connecticut Unfair Trade Practices Act, General Statutes42-110a et seq. (CUTPA) in the second count. The action arose out of the plaintiff's purchase of a new 1988 Toyota pick-up truck from the defendant, which operates a new and used car dealership.
The plaintiff specifically alleges that he placed an order for a 1989 Toyota pick up truck with the defendant on December 21, 1988. He further alleges that he gave the defendant his check for $10,000, but was not given a copy of his purchase order form at the time. He next essentially alleges that when he returned to the dealership a week later to get the vehicle, the order form had been altered in several respects, and as a result, he was coerced into purchasing a 1988 model worth $300 less than the 1989 originally contemplated, to his loss and damage.
The plaintiff claims compensatory and punitive damages and attorney's fees.
 I.
From the evidence the court finds the following facts. The plaintiff went to the defendant's dealership offices on December 21, 1988 to purchase a Toyota pick up truck to replace his present truck which was on its last CT Page 7077 legs. The plaintiff told the defendant's salesman, Devine, that he wanted a specific truck: a 1988 Toyota, with an extended cab and bucket seats, a beige color, and with no other options. Devine advised the plaintiff that as it was past the end of the 1988 model year, it was unlikely that such a vehicle would be available. Devine suggested that as 1989 models were now readily available, and the cost differential was only $300[2] more, that the plaintiff order a 1989 instead. The plaintiff agreed and signed a purchase order (Plaintiff's Exhibit A) dated December 21, 1988, for a 1989 truck at a price of $10,000, and gave the defendant his check dated December 22, 1988, which was deposited by the defendant the next day. The defendant did not give the plaintiff a copy of the purchase order to the plaintiff on December 21, 1988, and it was not signed by an authorized representative of the defendant dealership until December 28, 1988.
A day or so after December 21, 1988, the defendant located a 1988 Toyota which met the plaintiff's specifications at a Massachusetts dealership and Devine telephoned the plaintiff and told him that this vehicle had an "additional equipment value package" at an extra cost of $300. As the plaintiff did not want the vehicle to be driven down from Massachusetts, he agreed with the defendant to pay an extra "destination charge" of $450 for its transportation to Connecticut by towing and also agreed to pay for the $300 value package. No attempt was made then by the defendant to meet with the plaintiff to revise the purchase order or draft a new one, to reflect these changes, and Devine did not advise the plaintiff that the vehicle located was a 1988 model instead of a 1989 as originally ordered.
When the truck was delivered to the defendant and made ready, Devine picked the plaintiff up at his home and drove him to the defendant's dealership on December 28, 1988 to consummate the transaction. The plaintiff's truck had broken down and he had no transportation. The defendant's representatives altered Exhibit A on or before December 28, 1988 by changing the model year from 1989 to 1988, adding the destination charge, the value package, other charges and totals and adding a notation that the $10,000 deposit was non-refundable. The defendant also inserted the date of December 28, 1988 in the spaces next to the signatures of the plaintiff and defendant's sales manager. Only the addition CT Page 7078 of the non-refundable notation was initialed by the plaintiff.
A new purchase order was also prepared containing essentially the same terms for a 1988 Toyota, and although dated December 29, 1988, was signed by the parties on December 28, 1988. The plaintiff was told by Devine that the $10,000 was non-refundable once the defendant obtained the car the plaintiff had ordered; the plaintiff believed that he was buying a 1989 model, even during the consummation of the sale when the bill of sale and all of the documents respecting the vehicle showed that it was in fact a 1988, excepting Exhibit A which was subtlely altered to reflect that the vehicle was a 1988.
The plaintiff, because of his need for a replacement vehicle and because he felt coerced by Devine's statement that the $10,000 deposit was non-refundable, completed the transaction and paid the balance of the purchase price, taxes and costs. In the light of his age and his lack of sophistication, he was hampered and adversely affected in his dealings with the defendant's staff by his inability to refer to a copy of the original purchase order.
On or before the conclusion of the transaction, the defendant's representatives gave the plaintiff all of the necessary title documents, and the plaintiff took delivery of the vehicle. The plaintiff realized a day or two later that the date on Exhibit A was altered, and that he overpaid $300 for the 1988 vehicle. The defendant never offered an explanation for the $300 overcharge, nor at any time, offered a refund to the plaintiff.
 II.
The plaintiff's first count alleging a claim of fraudulent misrepresentation requires little discussion. There are four essential elements which must be proven to establish an action in fraud: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so when made; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. Miller v. Appleby,183 Conn. 51, 54-55 (1981). A claim of fraud must be proven by clear, precise and unequivocal evidence. This is a higher CT Page 7079 and more exacting standard than the preponderance of the evidence rule ordinarily applied in civil actions. Whether the evidence supports the plaintiff's claim of fraud is a question of fact. J. Frederick Scholes Agency v. Mitchell,191 Conn. 353, 358 (1983).
In this case, the plaintiff claims that the fraud was constituted by the defendant's alteration of the vehicle model year combined with the statement to him that the deposit was non-refundable which coerced him to go through with the transaction.
Measured by the clear, precise and unequivocal evidence standard, the court disagrees. The plaintiff originally desired to purchase a 1988 model with certain specifications. The truck obtained by the defendant met all of these specifications together with the "additional value package" for which the plaintiff agreed to pay extra. The plaintiff was in dire need of another vehicle and was anxious to conclude the purchase of a new vehicle. On this evidence, the plaintiff has simply failed to meet his burden of proving that he relied on the actions of the defendant's representatives in purchasing the truck to his detriment. Moreover, he has failed to show that the defendant's representatives acted with the fraudulent intent of inducing the plaintiff to purchase the 1988 truck so that the defendant could obtain the $300 price increment. Hence, the plaintiff's claim of fraud fails.
 III.
General Statutes 42-110b(a) (CUTPA) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The statute also provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by42-110b, may bring an action . . . to recover actual damages." General Statutes 42-110g(a). CUTPA also provides authority for a court, in its discretion, to award punitive damages and reasonable attorney's fees. See 42-110g(a) and (d).
In determining whether a practice violates CUTPA, the court should employ these criteria: "`(1) [W]hether the CT Page 7080 practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers. . . .'" Conaway v. Prestia, 191 Conn. 484,492-93 (1983), quoting FTC v. Sperry Hutchinson Co.,405 U.S. 233, 244-245 n. 8, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972); McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 568
(1984).[3]
"Thus, a violation of CUTPA may be established by showing either an actual deceptive practice; see, e.g. Sprayfoam, Inc. v. Durant's Rental Centers, Inc., 39 Conn. Sup. 78
(1983); or a practice amounting to a violation of public policy." Web Press Services Corporation v. New London Motors, Inc., 203 Conn. 342, 355 (1987) (Web Press I).
Because CUTPA is a self-avowed remedial measure, it should be construed liberally in an effort to effectuate its public policy goals. See Hinchcliffe v. American Motors Corporation, supra; General Statutes 42-110b(d).
The plaintiff argues that the defendant violated General Statutes 14-62 by failing to immediately provide the plaintiff with a copy of the original purchase order (Exhibit A) and that this taken together with defendant's other acts violated CUTPA. The defendant essentially argues that 14-62
requires the defendant to furnish a copy of the purchase order to the plaintiff only after it is signed by both parties. The defendant claims that for a purchase order to be "executed" within the meaning of 14-62 it must be completed and binding on both buyer and seller.
The court agrees with the plaintiff.
General Statutes 14-62(a) provides in relevant part that "Each sale shall be evidenced by an order properly signed by both the buyer and seller, a copy of which shall be furnished to the buyer when executed. . . ." The purchase order form (Exhibit A), on the bottom, just above the line for the buyer's signature, says this: "THIS ORDER IS NOT BINDING UNTIL SIGNED AND ACCEPTED BY DEALER." It also provides just CT Page 7081 above this language: "I hereby acknowledge receipt of a copy of this order. . .", and next to the buyer's signature line: "And I have received a copy of this order."
The form also contains on the reverse this language: "If this order is for a new vehicle which you do not have in stock when the order is placed [as here], and you are not able to provide it within 90 days of the specified delivery date,[4] then I may cancel this order at any time after I give you 10 days notice (during which you may still deliver the vehicle)." Thus, it appears from this language that the plaintiff bound himself to purchase the vehicle for a period of ninety days, if the defendant was able to locate one within that time, or within ten days after giving notice of cancellation. The plaintiff also paid a $10,000 deposit when he signed the purchase order. Therefore, as the plaintiff was unilaterally bound to perform by his signing of the order, the order was in fact "executed" within the meaning of 14-62, and the defendant was under a duty to provide a copy to the plaintiff forthwith. To interpret the statute otherwise in the light of this language in the purchase order would frustrate the plain meaning and purpose of the statute, that is to inform and protect vehicle purchasers, and allow dealers to accept deposits and orders, and delay being bound, while binding the buyer, thereby inviting opportunities for deception and fraud.
The defendant argues that the term executed means `done', `completed', `effectuated and performed', and cites Bouvier's Law Dictionary, (Baldwin's Student Edition 1934) at 377, and asserts therefore that 14-62 only requires the furnishing of a copy of the purchase order when countersigned by the seller, in other words, when a completed, bilateral sales contract had been formed. The defendant cites no other authority for this proposition.
The court does not construe the statute so narrowly, when applying established principles of statutory construction to ascertain the apparent intent of the legislature. "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." Dart CT Page 7082 Bogue Co. v. Slosberg, 202 Conn. 566, 572 (1987).
The issue presented is whether the legislature intended to require a copy of the purchase order signed by the buyer to be given to him when signed, or only after the seller agreed to be bound. The plain language of the statute requires that a "sale be evidenced by an order properly signed by both the buyer and seller." The very next phrase states, "a copy of (the order) shall be furnished to the buyer when executed." The statute does not by its terms state that the copy must be furnished after execution by both buyer and seller. "Courts cannot, by construction, read into statute provisions which are not clearly stated." Glastonbury v. Gillies, 209 Conn. 175, 179 (1988).
"It is a cardinal rule of statutory construction that a statute is not to be construed to thwart its purpose." Narel v. Liburdi, 185 Conn. 562, 571 (1981), cert. den.456 U.S. 928 (1982). And, a "remedial" statute is to be construed in favor of those whom it was intended to protect. See Staples v. Palten, 214 Conn. 195 (1990). Moreover, in construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result. King v. Board of Education,203 Conn. 324, 332-33 (1987).
The court may also look to the legislative history regarding 14-62 to reveal the intent of the legislature as to the statute's scope and purpose and the policy underlying its passage. "Before the true meaning of a statute can be determined where there is genuine uncertainty concerning its applications, consideration must be given to the problem in society to which the legislature addressed itself." O'Donnell v. Rindfleisch, 13 Conn. App. 194, 202, cert. den.207 Conn. 805 (1988).
P.A. 63-456 added to 14-62 the requirement that a copy of the purchase order be furnished to the buyer. It is clear from the legislative history of the 1963 amendment that the very evil complained of here was explicitly discussed.[5]
The obvious intent and purpose of the statute with this legislative history was to compel a car dealer to give a buyer a copy of the order the buyer signed, and placed a deposit on, when he signed it. "Our courts have recognized the CT Page 7083 importance of construing a statute in accordance with the legislative policy the statute was designed to implement." Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 96
(1992).
It is abundantly clear that the defendant's actions with respect to the purchase order were in violation of14-62 and thus ran afoul of CUTPA.
Even if 14-62 did not command the furnishing of a copy of the order to the plaintiff when he signed it, the court concludes that the defendant had a duty to furnish one promptly after it located the sought-for car and obtained the plaintiff's consent to the additional charges. Fair dealing would have required the defendant to revise the order to show the changes or prepare a new order and obtain the plaintiff's initials to the changes or his signature, as the case may be.
Thus, the court concludes that the actions of the defendant in failing to give the plaintiff a copy of the order when signed, or at least have it redrafted and signed by both buyer and seller when the vehicle was located, and after the defendant had deposited plaintiff's $10,000 check offend public policy, were deceptive and constituted a breach of established concepts of fairness.
Turning to the second criterion of the Sperry rule, the court now must determine whether the defendant's acts were "immoral, unethical, oppressive or unscrupulous." In this case, the defendant quoted a price $300 higher for the 1989 model than for the 1988. Then, when the 1988 was obtained, the same price was charged. The defendant's representatives then unilaterally made material alterations to the original purchase order, including changing of the model date, and postdating the signature of the plaintiff. In addition, the defendant accepted a $300 overcharge when the defendant knew or should have known it was not entitled to it, as it constituted a breach of the defendant's agreement to sell a 1988 model for $300 less. Taken together with the defendant's failure to provide a copy of the purchase order to the plaintiff when he signed it, or at least when his check was deposited, even when measured by the ethical standard of an automobile dealer's showroom, the acts and omissions of the defendant were unethical. CT Page 7084
And, when the court considers the plaintiff's lack of sophistication, ability to articulate and his mental acuity, the court finds that he was taken unfair advantage of. Therefore, the court concludes that the defendant's actions were unscrupulous in dealing with a person of unequal bargaining position in the totality of circumstances present in this case. The defendant's actions led directly to the plaintiff failing to realize that he was overpaying $300 for the 1988 truck, and although the plaintiff has not shown them to be immoral or oppressive, the defendant's actions were both unethical and unscrupulous.
Turning next to the third Sperry criterion, the court must decide whether the defendant's violation caused substantial injury to the plaintiff. In considering this criterion our Supreme Court has said, quoting the Federal Trade Commission:
"The independent nature of the consumer injury criterion does not mean that every consumer injury is legally "unfair," however. To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competitor that the practice produces; and it must be an injury that consumers themselves could not have reasonably avoided." Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 113 (1992).
The consumer injury in this case is not outweighed by any countervailing benefits to consumers produced by a practice of not providing copies; and as it was not an injury that the plaintiff under the totality of circumstances could have reasonably avoided, the only remaining question is whether the injury was substantial. The defendant argues that a $300 loss is simply not a substantial injury, citing Web Press Services Corporation v. New London Motors, Inc.,205 Conn. 479 (1987) (Web Press II). However, that case involved a sale of a used vehicle where the plaintiff sought a refund of the entire purchase price of $7,995, after the dealer had undertaken numerous repairs of defects, promptly and without charge, by reason of a defective axle. The defect would have required a $600 repair cost and was to be equally shared under the parties' limited warranty agreement. In this case, the defendant never offered a refund of the $300 obtained from the plaintiff, and the plaintiff's claim CT Page 7085 for compensatory damages is for the $300, not a refund of the entire purchase price.
In Cheshire Mortgage Services, Inc. v. Montes, supra, the court held that violations costing the borrowers $545 in the context of a $43,500 mortgage loan did indeed cause the borrowers substantial injury. The sum of $300 to a purchaser of a $10,000 new truck is not insignificant; in fact, it represents a week's net pay after necessary withholding, to many wage earners, who live in solvency only from one week's pay check to the next. The court finds that the $300 loss to the plaintiff in this case was a substantial injury.
In any event, it should be noted that all three criteria of the Sperry rule need not be satisfied to support a finding of unfairness. McLaughlin Ford, Inc. v. Ford Motor Co., supra, 569 n. 15. And even if the plaintiff's $300 loss may not be substantial, the degree to which the other two criteria have been met persuades this court that the withholding of a copy of the purchase order while holding a $10,000 deposit check and depositing it was an unfair and deceptive trade practice in violation of CUTPA.
The court therefore finds that the plaintiff has suffered actual compensatory damages in the amount of $300.
 IV.
The court now turns to the plaintiff's claims for reasonable attorney's fees and punitive damages.
The plaintiff, in his trial brief, claimed the sum of $1,500 in attorney's fees. No itemized bill or other testimony was provided. However, the court had the pleadings and the whole file before it, observed the trial and received and considered post-trial briefs. The court can also apply its own general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described. See Piantedosi v. Floridia, 186 Conn. 275, 279
(1982). General Statutes 42-110g(d) provides in relevant part, that: ". . . the court may award, to the plaintiff, . . . reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery." CT Page 7086
In this case, considering all of the above factors, the court deems the sum of $1,000 reasonable as an award of plaintiff's attorney's fees.
The court now turns to the plaintiff's claim for punitive damages.
Awarding punitive damages under CUTPA is discretionary. General Statutes 42-110g(a) and (d). See Gargano v. Heyman, 203 Conn. 616, 622 (1987).
"In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence. Gargano v. Heyman, supra, 622. (internal citation omitted). See Nielsen v. Wisniewski, 32 Conn. App. 133, 138 (1993).
The evidence and the totality of the circumstances of this case do not satisfy these basic requirements, and the conduct of the defendant's representatives were not sufficiently outrageous to justify an award of punitive damages.
Accordingly, on the second count, judgment may enter for the plaintiff to recover from the defendants the sum of $300 compensatory damages plus interest from December 28, 1988, together with attorney's fees of $1,000; and judgment may enter for the defendants on the first count.
Costs are taxed in favor of the plaintiff.
Teller, J.